May it please the Court, I am Joshua Glellen, appearing on behalf of Mr. Christie this morning. We believe that the Fourth Circuit got it exactly right in recently reversing the predicate decision of the Benefits Review Board on the basis of which the Board reversed the ALJ's award to Mr. Christie. There is nothing relevant in the statute whatsoever about retirement, voluntary or involuntary. What there is, is a standard for disability that ties the extent of disability to the worker's wage earning capacity. And as the Fourth Circuit reasoned, the capacity to earn wages is not cut off by a retirement, whether it's voluntary or involuntary. The BRB acknowledges in its decision, in a footnote near the end of the opinion, that a scheduled permanent partial disability that arises after the date of a retirement, voluntary or otherwise, remains compensable. The compensability is not affected by the intervening retirement between the on-the-job incident that leads to the scheduled disability and the appearance and rating of that disability. I gather, Counsel, that for your purposes, since the Fourth Circuit took the approach of, this is just plain statutory analysis, the statute says nothing about retirement, we're not going to talk about retirement. End of story. Is that pretty much your argument? That's pretty close, yes. There are certainly other contexts, other aspects of the compensability scheme that the Board agrees are not affected by retirement. Georgia Pacific seems to disagree with that. They assert that they were able or should have relied on their own prior case law through the Board. What's your response to that? Well, first, that the Board's prior case law before Moody, when the ALJ addressed the subject, was not what the Board pretends in Moody that it was. It was not, was there a voluntary retirement? It was, voluntary or involuntary was not the question. It was, was the retirement motivated by the employment-related condition? Mr. Moody's was, as the ALJ explicitly found. He saw that as the critical determinant under the Board's previous authorities. It was only in Moody that the Board changed that standard and said the critical factor is, was the claimant able, still able to do his usual work at the time he retired. Mr. Sherman, when did the injury occur? I'm sorry? When did the injury occur? Ah, in 1995 was the original injury here. The injury does seem to have been aggravated by his continuing work. His supervisor agreed. Everyone knew that the work, as limited as it was, was still causing aggravations of his condition. And he retired in 2010? Correct. So what, 25 years after he was injured? Yes. And he claims disability in 2016? No, the claim was 2012. I'm sorry. Yes, yes. The claim, yes, correct. Was he injured in 95 or 99? 99 is correct. I'm sorry. Yes. But that's still 21 years. Yes. And during that entire time, he, the employer continued to employ him, but his duties, the duties of which he was capable and therefore which he was assigned, became less and less as those years went on to the point where he was doing something that after his retirement an inexperienced attorney performed in one day a week, in 10 hours a week, whereas he had been paid for 40 hours a week. Doesn't your argument mean that he should be paid at the time he was injured, which would be 1999? No, because he continued to have an earning capacity after that. He was able to return to work, restricted work, and work which became more and more restricted over that period of time. But, no, there certainly could have been an argument made. The statute reads, Incapacity because of injury to earn the wages which the employee was receiving at the time of injury. Correct. Yes. So shouldn't that be 1999? Yes. And the stipulated average weekly wage was the same in 1999 as it was in 2010 when he retired. But that wasn't your argument, was it? Was it the same wage? He was paid no increase between 1999 and 2010? Yes. Yes, they continued to pay him. What did he get? What kind of retirement pay was he getting? I don't know how much it was precisely. I don't think the record shows, but it was reduced by 18 percent by the fact that he took that retirement six years before he reached the age of 62. Well, he got all his retirement, and now he's going to be double dipping, getting both disability and retirement. Yes. Yes. And that is a commonplace under every workers' compensation statute, including the Longshore Act, that does not have a contrary provision on point. The disability compensation continues beyond retirement age, continues after you've gone on Social Security, old age benefits. None of that affects continued entitlement to disability compensation if you've become disabled while you're working. It doesn't go away, except in those few states that have a provision to the contrary and say when you start taking Social Security old age benefits, that acts as a credit against your disability compensation, or whatever those provisions are. It varies in those few states that have it. But Longshore Act has nothing like that, and it has always been the case that disability compensation continues after retirement. And in this case, for example, I don't think anyone can test that if Mr. Moody had worked for those additional two years and then retired because he could no longer do even the minimal duties he had been doing and the employer said, sorry, we can't accommodate you any further than this. He took the retirement at that time. So you would read the statute as saying incapacity in 2012 because of injury in 1999 to earn the wages which the Does that make sense? Yes. Yes. And that's exactly what did happen. And the ALJ here, you agree with the ALJ, I think. We do indeed. And the ALJ made a determination that here Mr. Christie was not eligible for a couple of years. Is that right? Or for a year? There was no. Can you walk me through that? Yes. The claim was only for the total disability that commenced when the doctor said, well, I've given you some conservative treatment here. You've been off work. You're not getting better. This is a permanent condition, and here are your employment restrictions, which the ALJ found no alternative employment within those conditions imposed by the doctor was available to him. And so as a result, from that point forward, in your view, what should happen? That is when his permanent total disability commenced, so he is entitled to compensation for that permanent total disability just as the ALJ awarded. We request the court to reinstate the ALJ's decision. We don't believe we need a remand or anything else. And is there a limit on how long he would get the total? No. All permanent disability benefits, other than those covered under the schedule of injuries to particular members, all permanent disability benefits continue for life or until something in the physical condition changes and the employment-related injury no longer totally disables the worker. Or in the case, the same with a permanent partial loss of earning capacity. That continues for life. Irrespective of other conditions that may arise as time goes on that would also have disabled the claimant. If the worker is disabled by the employment injury, the fact that he may later be also disabled by some other condition does not relieve the employer of liability for that continuing disability. So those awards are for life. Had he had total disability in 1999, would he be eligible to retirement in 2010? He probably would not have had sufficient years on the waterfront to qualify for a... He would not have been drawing retirement pay after disability. I'm sorry. He would not be drawing retirement pay after disability, just disability. Yes, that's correct. He would have had compensation. If they had not taken him back to work after his spinal fusion surgeries, he might well have been permanently totally disabled at that point. The employer was required to find alternative employment for a disabled person. Correct. They are not required to do so. But if they do not, then they certainly face liability for the loss in earning capacity that's associated with the injury at that point. He could not have taken a carpentry job. You know, if he had come to Georgia-Pacific applying for that job, he could not have gotten it because he couldn't do all the duties of the carpentry job that he had been doing. So he was given alternative employment. They gave him alternative employment in order to avoid liability for serious partial disability or maybe even total disability. The... Does the record show a causative link between the injury and the disability? Oh, absolutely. It's not contested. It's not contested. Were any facts taken on that issue? Yes. Yes. The ALJ explicitly found that the back condition addressed by the doctor, for which he was in treatment throughout the whole period, the condition as it was found by the doctor two years after the retirement was totally disabling. That condition, that back condition resulting from the 1998 injury was totally disabling. The ALJ made that explicit factual finding. It was not seriously contested. Well, it was contested to some extent. The Georgia-Pacific put on some vocational evidence that tried to say, yes, there was some minimum wage or thereabouts, maybe part-time employment, of which he was still capable despite the doctor's restrictions. And the ALJ rejected that evidence and found, no, he is totally disabled. The VRA made its decision based entirely on Moody 1, right? It based its decision... The board did. Yes. The VRA, right. Yes, exactly. So it never considered all these other arguments that you're making. Well, the ALJ had made those, applied the board's previous law, which is... But we based our review on the VRA decision, do we not? Yes, yes. And the VRA decision never went into a review of all the other aspects of the findings made by the ALJ. I'm sorry. I missed your point. No. None of those other findings was challenged before the board, before the board. On the appeal from the ALJ's decision... But the decision by the board was based entirely on the Fourth Circuit decision later reversed in Moody. On the board's decision later reversed in Moody, yes. Yes. So shouldn't we remand to allow the board to review the ALJ and all its findings? Well, I don't think the Respondent has asked for that. I wouldn't have any huge objection to that as long as, of course, the board's restricted to the arguments that Georgia-Pacific made on its appeal to the board. But... Otherwise, what relief are you seeking here? Reinstatement of the ALJ's award. Vacate the board's decision and reinstate the ALJ's award. And so to do that, you're asking us to read the disability section of the statute differently than what the board did? Differently than the board did. And to follow the Fourth Circuit. And to agree with the Fourth Circuit. Now, even if you don't agree fully with the Fourth Circuit, in Moody, it was clear that the claimant had made the decision to retire before the injury to his shoulder even occurred. It was during that six weeks or so between his giving notice that he was going to retire and the time that took effect that he injured the shoulder. And the surgery for that shoulder was just delayed until after he had retired. In this case, the decision to retire was not made before the injury, and it was, as the ALJ explicitly found, because of the injury that he made that decision to take the early retirement. Other questions about my colleague? No. All right, counsel. Thank you very much. Thank you. We'll hear from Georgia Pacific. Good morning. May it please the Court, Stephen Verutsky on behalf of Georgia Pacific. The legal issue is whether the Benefits Review Board has reasonably interpreted the term disability as it's defined by the Act. 902 sub 10 defines disability as incapacity because of the injury to earn wages. And this definition necessarily requires the finder of fact to ask why someone is not in a position to earn wages at the time of their disability. And I think it's pretty clear. The statute itself doesn't mention anything about retirement. So that leaves That actually hurts you, doesn't it? Well, I think that because the statute itself requires the finder of fact in the court to address incapacity because of the injury, that necessarily requires a determination that incorporates retirement. Well, that's an interesting argument. What's wrong with the Fourth Circuit's analysis of the statute itself, putting aside the factual differences? And we recognize there are some factual differences here. But the Fourth Circuit's analysis in Moody 2, they went over very carefully what the statute itself said and made the point that the concept of retirement is simply not discussed. It's just irrelevant in terms of what you have to find for disability here. Wherein did the Fourth Circuit err in that case? Well, Your Honor, my reading of Moody is they focused almost entirely on the term incapacity and didn't consider incapacity in the context of the entire statute, which says because of injury. And that's what the Benefits Review Board has done over the past 30 years. They ask why someone is not in a position to work at the time the disability occurs. And that's when issues like retirement come into play. I'm not sure that answers my question, but in this particular case, I don't think that you're arguing that Mr. Christie decided to retire because he had heard from his I guess it was a steward or somebody that told him that Georgia-Pacific had decided or was about to decide to extend the date when you could have early retirement past a point. He thought he could continue to work. Do you agree with that? The testimony from Mr. Christie is that he did hear from his union that Georgia-Pacific was going to change its early retirement option, and he may not have the option to retire early at the age of 62. And he admitted that he could continue to work for some period of time, but he was not sure how much longer. Right, but it was because he had been injured that he was faced with that dilemma, right? If he'd have been full-bodied, never injured, this would not have ever been an issue, right? That was certainly one of his considerations. You don't dispute that he was injured on the job. I guess it was moving concrete bags. Correct, there's no dispute about that. Okay, so go ahead and answer the question then. So if you don't dispute that he was injured on the job, he understood that this early retirement was going to go away. He knew he wouldn't last the full six years based on how he was feeling, so he decided, as he was entitled to, or do you dispute that he wasn't entitled to take early retirement? He was entitled to take early retirement. So he did, right? And later, he continues with his life, I guess, and managing his pain and his injury. But it gets to a point, apparently in 2012, I believe, based on his doctors, that they've done everything they can for him, and he is basically incapacitated due to that prior injury. That's correct. So doesn't that fulfill the plain language meaning of this statute that would then enable him to get the permanent long-term disability? Well, Your Honor, what the Board considered, again, this goes back to the statute, disability or incapacity because of injury, and the Board determined that looking at the time he chose to take the early retirement, he was still physically capable of working. Yes, he did have some concerns, like we all do, about whether or not we can make it to full retirement, but the fact of the matter was, according to Mr. Christie's own testimony, he was still— And where is that in the language here that matters? Well, Your Honor, my focus is on the because of injury, and I think that invites the Court and invited the Board to consider why is somebody not in a position to earn wages, and the Board determined that Mr. Christie was not in a position to earn wages when his back condition became disabling because he had taken the early retirement two or three years prior to that time. But in terms of the statute, Mr. Glellan pointed out that the ALJ found a causative link between the incapacity and the injury. So isn't that in a sense a finding that the incapacity in 2012 was because of injury in 1999? Partially, yes, but I think that the— Doesn't that end the inquiry? It does not. The Benefits Review Board over the past 30 years has considered that because of injury to be a broader question which requires them to evaluate issues like retirement, and they determined that once somebody takes a voluntary retirement, in other words they're still physically capable of working at the time of retirement, if their injury subsequently becomes disabled, they don't have a loss of earning capacity because it's already been subsumed by the earlier retirement. But you're telling us what the Benefits Review Board considered. I mean, we have to look at this de novo and look at the plain meaning. So I'd like your best argument as to why the plain meaning here supports your position. Yes, Your Honor, I certainly understand the de novo aspect of it, and there's no deference to the Benefits Review Board. However, there's also a case from the Ninth Circuit that's cited in my brief which says that the court has indicated it will respect the board's interpretation if it's reasonable and reflects the underlying policy of the Act. And I think the underlying policy indicates a balance of interests. But here, with respect, counsel, as I asked before, if Mr. Christie had never been injured, there simply wouldn't be an issue, would there? Just none at all because, you know, he wouldn't want to retire, presumably. But he was injured, and according to the information which I understand that you do not dispute, he was motivated to retire because he had been injured. He did not believe that he could make it to 62 and therefore might be deprived of the opportunity to have early retirement. That was, I believe, what the ALJ found was the motivating, if you will, causal agent. Doesn't that fit neatly within the meaning of the statute that we've been talking about? Well, the motivational aspect, I believe, the board found was contradicted by the fact that he was still physically capable of working at the time he retired and they weren't willing to, I guess, engage in the kind of speculative analysis about, you know, can I work until I'm 65 or 70? Well, let's just say he has a high threshold for pain. The doctors have said he's permanently disabled, permanently disabled. But he likes to, you know, make model airplanes and sell them on the street. He makes some money from that. How does that disqualify him? In fact, he's making money or earning money, or maybe he works cutting out news clippings for Georgia Pacific managers or something like that. It doesn't change the fact that, pursuant to the statute, his incapacity was because of his injury, and that occurred in 1999. But it continued to plague him, and it got worse and worse and worse, and when the time came that he felt he would lose an ability to retire early, it motivated him to act. How does that not fit within the statute? Well, I think I might have already—I don't want to repeat the same argument, but I keep coming back to the incapacity because of injury, and at least the way the Benefits Review Board has taken that statute, they focus on the because of injury element of it, and they don't consider it in a vacuum. They consider it in the real world where you actually take into account other factors which may have impacted your— But we're asking the same thing. He was injured. That did cause him to want to retire because he'd been injured. That's a real-world fact, right? That is correct. At least his testimony is that it motivated him to take the early retirement, but the Benefits Review Board found that that was counteracted by the fact that he could still physically work at the time he took early retirement, and according to the way the Board has interpreted the statute, you look at the time of retirement, and if somebody is physically capable of working and their retirement is voluntary, any subsequent disability that arises, they determine that they don't really have a capacity to earn wages because of the prior retirement, and they've drawn this distinction between voluntary and involuntary retirement, and the Board determined that the ALJ's decision about the voluntary aspect of it, they didn't find substantial evidence based primarily on Mr. Christie's own testimony that he was physically capable of working at the time he retired. Moody, too, had not come out by the time I think you submitted your briefing. However, I didn't see a 28-J letter stating your view on Moody, too. Yes. Is that correct? You didn't file a 28-J letter? Correct. Is there a reason you didn't do that? No, Your Honor. Okay. So give me your best argument as to why we shouldn't follow the Fourth Circuit's analysis of this exact statute and its plain meaning interpretation of this exact statute. Well, Your Honor, I think if you go back and look at the Moody decision, you will see that they— Moody, too. You're talking about Moody, too. Yes. They focused almost exclusively on the incapacity part of the statute and found that essentially everyone has capacity to earn wages regardless of retirement, so you can take your retirement and that doesn't necessarily—you're not necessarily withdrawing from the workforce. But what they didn't do is, again, go back and put that in the context of— It's incapacity with respect to the injury, due to the injury. Because of injury. But they considered it in a vacuum and they specifically said in their decision that they don't need to engage in a real-world analysis. And from that standpoint and from my reading, they considered the statute in a vacuum, which I don't think Congress intended. I think Congress intended a more— So you're saying it's ambiguous and so that's why you're going to review intent? You're saying it's not plain, that you disagree with the right now? Correct. I'm not saying—what I'm saying is that the statute in and of itself is ambiguous. It wasn't designed to consider all the alternatives and it requires— You agree there's no reference in here to retirement? Correct. Okay. What's your response to your opponent's argument that in the real world, when people retire on permanent disability, that they frequently get other benefits or they frequently work and it has absolutely nothing to do with the statute or the retirement? What's your response to that? Well, it is not uncommon for if somebody's disability forces them into retirement, in other words, they're not physically capable of continuing to work, they still get permanent partial disability benefits essentially till death. So that is one alternative. But the board, again, is trying to balance the act and say, okay, we're going to draw a distinction between somebody that voluntarily retires versus somebody that involuntarily retires. And we respect the fact that the board felt it had the authority to do that, but you agree that we have the noble review power just like the Fourth Circuit did, and if we look at the statute and we construe it differently than the board did, that's the end of the story, right, for this case? Correct. But I would also say that the Benefits Review Board's analysis of the statute is reasonable. It reflects the underlying policy of the act, and with the Ninth Circuit's prior precedent, it says that the Ninth Circuit should respect their decision. So even though it's de novo, it's maybe de novo light, for lack of a better term. Is that like Coors Light? Yeah, it could be. Any other questions by my colleagues? Unless you have other things you want to. I do have one. The Ninth Circuit in Johnson v. Director, 911F2247, held that under the statute it's the time of incapacity that is the injury time, not the injury itself, thus holding that the difference between a time of injury and a time of disability is not relevant to the finding of total disability. Aren't we bound by that? I'm sorry. I'm not sure I quite understand the question. Your question is at what point do you determine incapacity? Is it the time of injury or the time? Time of manifest. And the Ninth Circuit held time of manifest, as would happen with perhaps a latent disease. However reasonable that is, doesn't it bind us? I think it's instructive, but I think there's also varying periods of incapacity and disability. For example, Mr. Christie was on temporary disability benefits while he underwent surgery. The Act contemplates various periods of incapacity, so you can go from temporary to permanent back to temporary. You can have varying degrees of incapacity. But, again, I think that in this case the time of incapacity is whenever in 2012, and by that point he had no earning capacity because of the retirement. Other questions or follow-up? All right. Thank you, Brian. Thank you both. The case just argued is submitted. We will get you an answer as soon as we can. The Court stands in recess for the day.
judges: M. Smith, Murguia, Hellerstein